## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. HANEY III, CHRISTOPHER J. NAGEL, JOHN T. PRESTON, KATHERINE GUNDERSON, ANNE W. GILSON HANEY, GAIL E. PRESTON, ETHAN JACKS, AND EUGENE BERMAN, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE RISK INDEMNITY INC., GENESIS INSURANCE COMPANY, AND LLOYD'S & COMPANIES SYNDICATES NOS. 839, 376, and 2376 <br><br> Defendants. | CIVIL ACTION NO. 02-CV-10248-RWZ |

## COMPLAINT

### INTRODUCTION

1.      This action seeks a judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the Directors and Officers liability insurance policies, purchased from the Defendants by the corporation for whom the Plaintiffs served as officers and directors, require the Defendants to advance legal defense costs and to indemnify the Plaintiffs for any amounts they are obligated to pay by way of monetary damages or in settlement arising out of a lawsuit filed against them by MMT Recovery LLC and others in an action entitled <u>MMT Recovery LLC v. Haney, et al.</u>, Civil Action No. 01-10062-MLW (the "MMT Recovery Action" or the "Underlying Action").

### PARTIES AND JURSIDICTION

2.      Plaintiff William M. Haney III ("Haney" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

3.     Plaintiff Christopher J. Nagel ("Nagel" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

4.     Plaintiff John T. Preston ("Preston" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

5.     Plaintiff Katherine Gunderson ("Gunderson" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

6.     Plaintiff Anne W. Gilson Haney ("Gilson Haney" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

7.     Plaintiff Gail E. Preston ("Preston" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

8.     Plaintiff Ethan Jacks ("Jacks" or "Plaintiff") is, and at all relevant times was, an individual residing in Massachusetts.

9.     Plaintiff Eugene Berman ("Berman" or "Plaintiff") is, and at all relevant times was, an individual residing in Maryland.

10.     Upon information and belief, Defendant Executive Risk Indemnity Inc. ("Executive Risk" or "Defendant") is a corporation organized under the laws of the State of Delaware, which has its principal place of business at Simsbury, Connecticut, and which, at all relevant times, conducted business in Massachusetts.

11.     Upon information and belief, Defendant Genesis Insurance Company ("Genesis" or "Defendant") is a corporation organized under the laws of the State of Delaware, which has its principal place of business at Stamford, Connecticut, and which, at all relevant times, conducted business in Massachusetts.

BOSTON 1348796v1

12.     Upon information and belief, Defendant Lloyd's & Companies Syndicates Nos. 839, 376, and 2376 ("Lloyd's" or "Defendant") are foreign insurance associations with their principal place of business at London, England and their principal place of business in the United States at Chicago, Illinois and/or New York, New York, and which, at all relevant times, conducted business in Massachusetts on a regular and substantial basis, including the issuance of insurance policies to Molten Metal Technology, Inc. ("Molten Metal").

13.     Jurisdiction is based upon 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000.00 and the controversy is between citizens of different states.

14.     Venue is proper under 28 U.S.C. § 1391(a)(2) and (3), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and Defendants are subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

15.     This is an action for a declaratory judgment, breach of contract and attorneys' fees, and violation of M.G.L. c. 176D and c. 93A.

## BACKGROUND FACTS

16.     At all relevant times, Plaintiffs were officers and/or directors of Molten Metal, a corporation organized under the laws of the State of Delaware, and having its principal place of business in Waltham, Massachusetts. Molten Metal has been liquidated and an action brought solely on behalf of Molten Metal's creditors is now pending in the Bankruptcy Division of this Court.

The Required Coverage

Executive Risk Policy

17.     On or about January 19, 1998, in consideration of a premium of $350,000.00, which Molten Metal duly paid to Executive Risk, Executive Risk entered into,

-3-

issued, and delivered to Molten Metal, in the State of Massachusetts, a written contract of

insurance entitled "Directors and Officers Liability Insurance Policy," bearing a policy number

751-091628-98, and covering the period from January 19, 1998 through January 19, 1999 (the

"Executive Risk Policy"). A copy of the Executive Risk Policy is attached as Exhibit A and its

terms are incorporated herein by reference. The Executive Risk Policy was renewed through

January 19, 2002.

      18.     Under Section I of the Executive Risk Policy, Executive Risk is obligated

to

> pay on behalf of the Insured Persons Loss from Claims first made
> during the Policy Period against the Insured Persons for Wrongful
> Acts, except for Loss which the Company pays to or on behalf of
> the Insured Persons as indemnification.

The Executive Risk Policy defines "Insured Person" to include "any past, present or future

director of officer of" Molten Metal. (II(H)). The Policy defines "Loss" as:

    (1)    any monetary damages or settlements which an Insured Person is obligated to pay
          as a result of any Claim . . . including but not limited to punitive or exemplary
          damages where insurable under applicable law, and

    (2)    any Defense Expenses which an Insured Person is obligated to pay as result of
          any Claim . . .

(II(F)). The Executive Risk Policy defines a "Claim" to include "any civil proceedings in a court

of law or equity." ((II(B)(1)). The Executive Risk Policy defines "Wrongful Act" as:

    (1)    any actual or alleged act, error, omission, misstatement, misleading statement or
          breach of duty by an Insured Person in his or her capacity as a director or officer
          of the Company;

    (2)    any matter asserted against an Insured Person solely by reason of his or her status
          as a director or officer of the Company; and

    (3)    any actual or alleged act, error, omission, misstatement, misleading statement or
          breach of duty by an Insured Person in his or her Outside Capacity.

(II(M)).

BOSTON 1348796v1

19.    The Executive Risk Policy also provides:

The Underwriter will, upon written request, pay on a current basis
Defense Expenses for which this Policy provides coverage.
Otherwise, the Underwriter will pay Loss only on the final
disposition of a Claim.

(IV(B)(2)).

20.    The Executive Risk Policy also provides:

The coverage afforded by this Policy shall ... be extended to apply
to Loss resulting from a Claim made against a Person who, at the
time the Claim was made, is a lawful spouse of an insured Insured
Person to whom the spouse is married ... and ... such Insured
Person and his or her spouse are represented by the same counsel.

Genesis Excess Policy

21.    On or about January 19, 1997, in consideration of a premium of

$65,000.00, which Molten Metal duly paid to Genesis, Genesis entered into, issued, and

delivered to Molten Metal, in the State of Massachusetts, a written contract of insurance entitled

"Genesis Directors and Officers Liability Insurance Policy," bearing a policy number

YXB001372 and covering the period from January 19, 1997 through January 19, 1998 (the

"Genesis Excess Policy"). A copy of the Genesis Excess Policy is attached as Exhibit B and its

terms are incorporated herein by reference.

Lloyd's Excess Policy

22.    On or about January 19, 1997, in consideration of a premium of

$90,000.00, which Molten Metal duly paid to Lloyd's, Lloyd's entered into, issued, and

delivered to Molten Metal, in the State of Massachusetts, a written contract of insurance entitled

"Excess Directors and Officers and Company Reimbursement Indemnity," bearing a policy

number 542/F01230D97 and covering the period from January 19, 1997 through January 19,

BOSTON 1348796v1

1998 (the "Lloyd's Excess Policy"). A copy of the Lloyd's Excess Policy is attached as Exhibit C and its terms are incorporated herein by reference.

The Underlying Action

      23.    An action has been filed against Plaintiffs, for which coverage should be allowed under the Executive Risk Policy, or alternatively, under the Genesis and Lloyd's Excess Policies issued to Molten Metal.

      24.    More specifically, on or about December 9, 2000, MMT Recovery LLC and other plaintiffs, all sophisticated investment funds who invest in distressed securities and bankrupt entities, filed claims in the Suffolk County Superior Court against Messrs. Haney, Nagel, Preston, Jacks, Berman and others. See Complaint in an action entitled MMT Recovery LLC v. Haney, et al., C.A. No. 01-10062-MLW (hereafter the "Underlying Action" or "MMT Recovery Action"). A copy of the Complaint asserting the claims in the Underlying Action is attached as Exhibit D.

      25.    On January 11, 2001, the defendants removed the Underlying Action to this Court because it was related to two cases pending in this Court:  (1) the Molten Metal bankruptcy and a lawsuit brought by the Trustee of Molten Metal as part of that bankruptcy, entitled Stephen S. Gray, Chapter 11 Trustee v. William M. Haney, et al, No. 99-1653, ("Trustee Action"), and (2) a lawsuit brought by another former Molten Metal director and officer of Molten Metal to seek insurance coverage from Executive Risk for claims against him in the Trustee Action, entitled Peter A. Lewis v. Executive Risk Indemnity Inc., C.A. No. 00-11093-RWZ (the "Lewis Coverage Action").

      26.    The Underlying Action seeks, among other things, damages from the Plaintiffs and others for their alleged acts, errors, omissions, misstatements, misleading

statements and breach of the duties they allegedly owed to MMT Recovery in their capacity as officers and directors of Molten Metal. These claims were asserted against them solely by reason of their conduct or status as officers and directors of Molten Metal, or their status as spouses of a former officer or director of Molten Metal.

27.     For example, Count I of the Underlying Action alleges that the Plaintiffs, and others, acting as officers and directors of Molten Metal, allegedly sold debt and equity securities to MMT Recovery and are allegedly liable for untrue statements made in connection with that sale by virtue of their status as officers or directors of Molten Metal.

28.     The other claims in the Underlying Action include allegations against the Plaintiffs, and other former officers and/or directors of Molten Metal, based on their actions as officers and directors of Molten Metal, for alleged fraud, misrepresentation, and violations of M.G.L. c. 93A. Those allegations are pled largely through unspecified group allegations against all or a portion of Molten Metal's officers and directors. The Underlying Action also includes claims of fraudulent transfer against several of the spouses of the former Molten Metal officers and directors.

Notice of the Underlying Action to Executive Risk and Declination of Coverage

29.     The purported misconduct alleged in the Underlying Action occurred in March 1998 and thus is within the January 1998 to January 1999 coverage period of the Executive Risk Policy.

30.     On or about December 20, 2000 and January 12, 2001, several former officers and directors of Molten Metal timely notified Executive Risk of the claims in the Underlying Action in writing by mailing a copy of the Complaint to Executive Risk. They also requested that Executive Risk advise them as soon as possible regarding coverage under the

-7-

Executive Risk Policy. This notice was sent within days or weeks after the Plaintiffs and others were served with the Complaint in the Underlying Action.

31.     The Plaintiffs fulfilled all of the conditions that the Executive Risk Policy required them to perform.

32.     On January 22, 2001, Executive Risk declined coverage.

33.     Specifically, on or about January 22, 2001, Executive Risk, through its counsel, sent a letter stating that Executive Risk has no obligation under the Executive Risk Policy to defend the former officers or directors of Molten Metal in connection with the Underlying Action or to indemnify them for any amounts they are obligated to pay in damages or settlement in connection with that action. Executive Risk further stated that while it was denying coverage, it "reserve[d] the right to amend its coverage position if it becomes appropriate to do so based on any additional information or factual or legal developments as this matter progress." A copy of the letter from Executive Risk was forwarded to Mr. Haney's counsel on January 23, 2001 and is attached as Exhibit E.

Notice of the Underlying Action to Genesis and Lloyd's and Declination of Coverage

34.     On or about January 19, 2001, several former officers and directors of Molten Metal timely notified Genesis of the claims in the Underlying Action in writing by mailing a copy of the Complaint to Genesis. They also requested that Genesis advise them as soon as possible regarding coverage under the Genesis Policy. This notice was sent within days or weeks after the Plaintiffs and others were served with the Complaint in the Underlying Action.

35.     The Plaintiffs fulfilled all of the conditions that the Genesis Policy required them to perform.

36.     On February 15, 2001, Genesis declined coverage.

-8-

37.   Specifically, on or about February 15, 2001, Genesis, through its counsel, sent a letter stating that Genesis has no obligation under the Genesis Policy to defend the Plaintiffs in the Underlying Action or to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the claims in the Underlying Action. A copy of the letter from Genesis is attached as Exhibit F.

Notice of the Underlying Action to Lloyd's and Declination of Coverage

38.   On or about January 12, 2001, several former officers and directors of Molten Metal timely notified Lloyd's of the claims in the Underlying Action in writing by mailing a copy of the Complaint to Lloyd's. They also requested that Lloyd's advise them as soon as possible regarding coverage under the Lloyd's Policy. This notice was sent within days or weeks after the Plaintiffs and others were served with the Complaint in the Underlying Action.

39.   The Plaintiffs fulfilled all of the conditions that the Lloyd's Policy required them to perform.

40.   On April 9, 2001, Lloyd's declined coverage.

41.   Specifically, on or about April 9, 2001, Lloyd's, through its counsel, sent a letter stating that Lloyd's has no obligation under the Lloyd's Policy to defend the Plaintiffs in the Underlying Action or to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the claims in the Underlying Action. A copy of the letter from Lloyd's is attached as Exhibit G.

BOSTON 1348796v1

### Judge Zobel's Decision In The Lewis Coverage Action

42.      Shortly after Executive Risk denied the Plaintiffs coverage for the Underlying Action, the Plaintiffs sought to file a complaint claiming coverage under the Executive Risk Policy by moving to intervene in the Lewis Coverage Action. In that action, Mr. Lewis, another former Molten Metal director, claimed coverage under the same Executive Risk Policy for a different set of claims brought against him in the Trustee Action. When Genesis and Lloyd's also denied coverage, the Plaintiffs filed amended motions to intervene and Amended Complaints in Intervention seeking to add Genesis and Lloyd's as defendants. The matter was thereafter taken under advisement.

43.      On December 28, 2001, Judge Zobel, issued a Memorandum of Decision in the Lewis Coverage Action. Although the Court denied the Plaintiffs' Second Amended Complaint in Intervention, the Court noted that the Plaintiffs would not suffer any prejudice. Instead, Judge Zobel's Memorandum of Decision further supports the Plaintiffs' claims that Executive Risk, or alternatively, Genesis or Lloyd's, should provide coverage to the Plaintiffs for the Underlying Action.

44.      First, the Court granted Mr. Lewis' motion for summary judgment and held that Executive Risk could not deny coverage based on three policy exclusions, Section III.(C)(1) (denying coverage for claims arising from or that were the subject of prior and/or pending litigation); (ii) Section III.(C)(2) (denying coverage for claims that were the subject of any prior notice given under another insurance policy); and (iii) Section III(D)(1) (denying coverage for claims brought by one insured against another insured). A copy of the Memorandum of Decision is attached as Exhibit H.

BOSTON 1348796v1

45.     Second, the Court also addressed, in part, the defenses raised by Executive Risk to the Plaintiffs' claim for coverage for the Underlying Action.  Executive Risk's primary grounds for denying coverage are that the Plaintiffs' claims are allegedly excluded because (i) the Underlying Action contains allegations "that are the same as, or substantially similar to, allegations" contained in the Trustee Action, as well as another previously filed lawsuit brought against some of the Plaintiffs, In Re Molten Metal Technology, Inc. Securities Litigation, C.A. No. 97-10325-MLW (the "Securities Litigation"), and thus subject to the pending litigation exclusion; and (ii) the Underlying Action contains allegations that are similar to allegations made on behalf of an entity called Castle Creek Partners in notice provided to the primary insurer of Executive Risk Excess Policy in December 1997 ("Castle Creek Claims"), and thus subject to the prior notice exclusion.  (See Ex. E, pp. 2-3)

46.     Specifically, Judge Zobel, in her Decision in the Lewis Coverage Action, stated that the allegations in the Underlying Action are "separate and distinct" from allegations raised by the Trustee in the Trustee Action.  Judge Zobel based this determination on the time frame in which the purported misconduct occurred (noting that the alleged misconduct in the Underlying Action occurred after Molten Metal's bankruptcy petition), and the individuals to whom the alleged misrepresentations were made (noting that the alleged misstatements in the Underlying Action made to a private investor to obtain financing for Molten Metal's Chapter 11 reorganization are different from the violation of fiduciary duties owed to Molten Metal and its creditors as alleged in the Trustee Action).

47.     Based on the same reasoning that the Court applied to the Trustee Action, the Securities Litigation and Castle Creek Claims are similarly separate and distinct from the claims asserted in the Underlying Action.

-11-

48.     Because the allegations in the Underlying Action are not the same as, or substantially similar to, the allegations raised in the Trustee Action, the Securities Litigation, or the Castle Creek Claims, Executive Risk's attempt to deny coverage on the basis of "prior and/or pending litigation" or "prior notice" provisions of the Executive Risk Policy is improper and constitutes an unfair claim settlement practice.

Renewed Notice to Executive Risk

49.     On January 25, 2002, counsel for Mr. and Mrs. Haney sent a renewed demand letter to Executive Risk's counsel demanding that Executive Risk amend its coverage position in light of Judge Zobel's Decision in the Lewis Coverage Action. A copy of that letter is attached hereto as Exhibit I.

50.     Counsel pointed out that the District Court's findings in the Lewis Coverage Action as to the separate and distinct nature of the allegations in the Underlying Action as compared to the Trustee Action, the Securities Litigation, and the Castle Creek Claims rendered Executive Risk's "prior/pending litigation" and "prior notice" exclusions inapplicable. In the renewed demand letter, the Haneys noted that Judge Zobel's findings were consistent with the position taken by the other insurers in this matter. For example, Genesis' counsel had previously stated in a letter to Plaintiffs' counsel, dated February 15, 2001, that the allegations contained in the Underlying Action were not "alleging, arising out of, based upon or attributable to the facts alleged" in the Securities Litigation or the Castle Creek Claims. See Exhibit F.

51.     With respect to the Securities Litigation, Genesis stated that the plaintiffs in the Underlying Action "allege different misrepresentations, made on different occasions after [Molten Metal] declared bankruptcy, and the injuries alleged in the two lawsuits are distinct. The [Underlying Action] therefore does not appear to constitute a claim made during the Genesis

-12-

Excess Policy period based on the pre-existing notice of the [Securities Litigation]." (See Exhibit F, p. 3)

52.    With respect to the Castle Creek Claims, Genesis stated that "the alleged misrepresentations to Castle Creek concern different (potential) claimants, a different time-period, and different aspects of [Molten Metal's] business than are alleged in the [Underlying Action]" and therefore the [Underlying Action] is not a claim made during the Genesis Excess Policy period." (See Exhibit F, p. 3)

53.    In addition to the position taken by Genesis' counsel, Lloyd's' counsel stated that the Underlying Action "does not arise out of, is not the same as and is not related to the wrongful acts alleged in the [Securities Litigation or in the Castle Creek Claims]." See Exhibit G.

54.    Notwithstanding Judge Zobel's Decision, Executive Risk again declined coverage.

55.    Specifically, on or about January 29, 2002, Executive Risk, through its counsel, sent a letter to Mr. and Mrs. Haney's counsel, stating that Executive Risk was "assessing the implications of Judge Zobel's decision" and that "Executive Risk's coverage position with respect to the *MMT Recovery* litigation remains unchanged." A copy of the letter is attached as Exhibit J.

56.    The pending litigation and/or prior notice exclusions in the Executive Risk Policy cited by Executive Risk in its January 22, 2001 and January 29, 2002 denial of coverage letters are inapplicable to the facts at issue in the Underlying Action as to the Plaintiffs.

-13-

57.   Executive Risk is obligated to defend the Plaintiffs in the Underlying Action, and also to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the claims.

58.   An actual controversy exists between the Plaintiffs and Executive Risk regarding Executive Risk's defense and indemnification obligations.

The Conflicting Positions of Executive Risk, Genesis, and Lloyd's

59.   Executive Risk on the one hand, and Genesis and Lloyd's on the other hand, have taken conflicting and inconsistent positions in declining the Plaintiffs coverage under their respective policies. Accordingly, there is a dispute between the Plaintiffs and the insurers, and various disputes among the insurers, which must be resolved.

60.   In declining coverage on January 22, 2001, Executive Risk stated that it was not required to provide coverage in connection with the Underlying Action because it asserts that the Underlying Action "contains allegations that are the same as, or substantially similar to," allegations raised in the Securities Litigation, and thus allegedly "relate back" in time to the date of notice sent to Genesis and Lloyd's at the pendency of the Securities Litigation. Ex. E at 2. In other words, Executive Risk asserts that it need not provide coverage of the Underlying Action because, among other things, Genesis and Lloyd's must provide such coverage.

61.   In declining coverage on February 15, 2001, Genesis stated a contrary position. Among other things, Genesis asserted that the Underlying Action and the Securities Action "differ both in terms of timing, alleged wrongdoing, and alleged harm," and that the Underlying Action "does not appear to constitute a claim made during the [Genesis Excess Policy] period based on the pre-existing notice of the [Securities Litigation or the Castle Creek Claims]." Ex. F at 4-5.

-14-

62.    In declining coverage on April 9, 2001, Lloyd's stated that there was no coverage for the Underlying Action under the Lloyd's Excess Policy because, in part, the Underlying Action "does not arise out of, is not the same as and is not related to the wrongful acts alleged in the [Securities Litigation or the Castle Creek Claims]. ..." Ex. G at 3.

63.    The various conflicting positions of Executive Risk, Genesis, and Lloyd's cannot each be correct, and the Plaintiffs need this Court to resolve the conflict between those positions.

64.    To the extent the Court agrees with Executive Risk and concludes that the allegations in the Underlying Action are "the same as, or substantially similar to" the allegations in the Trustee Action, the Securities Litigation or the Castle Creek Claims, then the Court must conclude that the exclusions cited by Genesis in its February 15, 2001 denial of coverage letter are inapplicable to the Underlying Action as to the Plaintiffs.

65.    Genesis is therefore obligated to defend the Plaintiffs in the Underlying Action, and also to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the claims.

66.    An actual controversy exists between the Plaintiffs and Genesis regarding Genesis' defense and indemnification obligations.

67.    To the extent the Court agrees with Executive Risk and concludes that the allegations in the Underlying Action are "the same as, or substantially similar to" the allegations in the Trustee Action, the Securities Litigation or the Castle Creek Claims, then the Court must conclude that the exclusions cited by Lloyd's in its April 9, 2001 denial of coverage letter are inapplicable to the facts at issue in the Underlying Action as to the Plaintiffs.

-15-

68.    Lloyd's is therefore obligated to defend the Plaintiffs in the Underlying Action, and also to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the claims.

69.    An actual controversy exists between the Plaintiffs and Lloyd's regarding Lloyd's defense and indemnification obligations.

The Securities Litigation Settlement

70.    Since the time that Mr. Lewis filed his action against Executive Risk, the Securities Litigation (the lawsuit brought against several former officers and directors of Molten Metal, which served, in part, as one of the bases for Executive Risk's denial of coverage for the claims that Mr. Lewis has sought coverage for) has been reported settled. That settlement was reported to Judge Wolf on January 25, 2001 at a hearing held in an action entitled In re Molten Metal Technology, Inc. Securities Litigation, CA No. 97-10325-MLW.

71.    As part of that settlement, MMT Recovery has agreed to stay its Underlying Action for a period of time to permit the Plaintiffs to pursue a decision concerning the applicability of insurance coverage, including the coverage of the Executive Risk Policy, to their claims.

## COUNT I

**(Declaratory Judgment as to Indemnification by Executive Risk for the Underlying Action)**

72.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 71.

73.    The Underlying Action seeks damages against the Plaintiffs and others as a result of their alleged "act[s], error[s], omission[s], misstatement[s], misleading statement[s] or breach[es] of duty in their capacity as officers or directors of Molten Metal," and was asserted

-16-

against the Plaintiffs, and others "solely by reason of their . . . status as an officer or director" of

Molten Metal.

74.     Accordingly, pursuant to the express terms of the Executive Risk Policy,

the Plaintiffs are entitled to a declaratory judgment that Executive Risk is obligated to defend the

Plaintiffs in the Underlying Action, and also to indemnify them for any amounts they are

obligated to pay in damages or settlement as a result of the Underlying Action.

## COUNT II

**(Declaratory Judgment as to Indemnification by Genesis and Lloyd's for the Underlying
Action)**

75.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 74.

76.     The Underlying Action seeks damages against the Plaintiffs and others as

a result of their alleged "act[s], error[s], omission[s], misstatement[s], misleading statement[s] or

breach[es] of duty in their capacity as officers or directors of Molten Metal," and was asserted

against the Plaintiffs, and others "solely by reason of their . . . status as an officer or director" of

Molten Metal.

77.     Accordingly, pursuant to the express terms of the Genesis Excess Policy

and the Lloyd's Excess Policy, the Plaintiffs are entitled to a declaratory judgment that Genesis

and Lloyd's are obligated to defend the Plaintiffs in the Underlying Action, and also to

indemnify them for any amounts they are obligated to pay in damages or settlement as a result of

the Underlying Action.

-17-

## COUNT III

### (Breach of Contract by Executive Risk as to the Underlying Action)

78.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 77.

79.    The Executive Risk Policy constitutes a contract between Molten Metal, and Executive Risk. The Plaintiffs, as officers and directors of Molten Metal, are named insureds in those contracts.

80.    By declining to defend the Plaintiffs in the Underlying Action and also to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of the Underlying Action in accordance with the terms of the Executive Risk Policy, Executive Risk is in breach of the contract.

81.    The Plaintiffs have suffered injury by reason of Executive Risk's breach and are entitled to recover attorneys' fees incurred and to be incurred in connection with the Underlying Action as well as other damages in an amount to be proven at trial.

## COUNT IV

### (Breach of Contract by Genesis and Lloyd's as to the Underlying Action)

82.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 81.

83.    The Genesis Excess Policy and the Lloyd's Excess Policy constitute contracts between Molten Metal, and Genesis and Lloyd's. The Plaintiffs, as officers and directors of Molten Metal, are named insureds in those contracts.

84.    By declining to defend the Plaintiffs in the Underlying Action and also to indemnify them for any amounts they are obligated to pay in damages or settlement as a result of

-18-

the Underlying Action in accordance with the terms of the Genesis Excess Policy and the

Lloyd's Excess Policy, Genesis and Lloyd's are in breach of their contracts.

         85.     The Plaintiffs have suffered injury by reason of Genesis and Lloyd's'

breaches and are entitled to recover attorneys' fees incurred and to be incurred in connection

with the Underlying Action as well as other damages in an amount to be proven at trial.

## COUNT V

**(Recovery of Attorneys' Fees and Expenses from Executive Risk for the Underlying Action)**

         86.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 85.

         87.     Since this is an action for a declaratory judgment that Executive Risk

violated its duties to defend and indemnify the Plaintiffs, the Plaintiffs are entitled to recovery of

their attorneys' fees and expenses incurred in this action.

## COUNT VI

**(Recovery of Attorneys' Fees and Expenses from Genesis and Lloyd's for the Underlying Action)**

         88.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 87.

         89.     Since this is an action for a declaratory judgment that Genesis and Lloyd's

violated their duties to defend and indemnify the Plaintiffs, the Plaintiffs are entitled to recovery

of their attorneys' fees and expenses incurred in this action.

BOSTON 1348796v1

## COUNT VII

### (Violation of M.G.L. c. 176D and c. 93A by Executive Risk)

90.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 89.

91.    By wrongfully and repeatedly denying coverage for the Plaintiffs under the Executive Risk Policy, Executive Risk, violated its duties to defend and indemnify the Plaintiffs.

92.    Executive Risk's conduct constitutes a willful, knowing, unfair and deceptive trade practice and an unfair claim settlement practice and thus a violation of M.G.L. c. 93A and c. 176D.

## COUNT VIII

### (Violation of M.G.L. c. 176D and c. 93A by Genesis and Lloyd's)

93.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 92.

94.    By wrongfully and repeatedly denying coverage for the Plaintiffs under the Genesis Excess Policy and the Lloyd's Excess Policy, Genesis and Lloyd's violated their duties to defend and indemnify the Plaintiffs.

95.    The Defendants' conduct constitutes a willful, knowing, unfair and deceptive trade practice and an unfair claim settlement practice and thus a violation of M.G.L. c. 93A and c. 176D.

BOSTON 1348796v1

WHEREFORE, the Plaintiffs seek judgment as follows:

1)    (a)    a declaration by this Court that Executive Risk is obligated under the Executive Risk Policy to defend all of the Plaintiffs in the Underlying Action; or, in the alternative,

(b)    a declaration by this Court that Genesis is obligated under the Genesis Excess Policy to defend all of the Plaintiffs in the Underlying Action; and

(c)    a declaration by this Court that Lloyd's is obligated under the Lloyd's Excess Policy to defend all of the Plaintiffs in the Underlying Action;

2)    (a)    a declaration by this Court that Executive Risk is obligated under the Executive Risk Policy to indemnify all of the Plaintiffs for any liability incurred in the Underlying Action; or in the alternative

(b)    a declaration by this Court that Genesis is obligated under the Genesis Excess Policy to indemnify all of the Plaintiffs for any liability incurred in the Underlying Action; and

(c)    a declaration by this Court that Lloyd's is obligated under the Lloyd's Excess Policy to indemnify all  of the Plaintiffs for any liability incurred in the Underlying Action;

3)    damages for breach of contract in an amount to be determined at trial;

4)    double and/or treble damages for violation of M.G.L. c. 176D and c. 93A;

5)    all of the Plaintiffs' reasonable attorneys' fees and expenses incurred in this

action; and

6)    such other further relief that this Court deems just and proper.


DR. CHRISTOPHER J. NAGEL, JOHN T.              WILLIAM M. HANEY III and
PRESTON, KATHERINE GUNDERSON                   ANNE W. GILSON HANEY
and GAIL PRESTON

By their attorneys,                            By their attorneys,


_Michael J. Tuteur_ (CAH)                      _Karen F. Green_ (CAH)
Michael J. Tuteur (BBO #543780)                Karen F. Green (BBO #209050)
Lawrence M. Kraus (BBO #564561)                Daniel W. Halston (BBO #548692)
Epstein Becker & Green, P.C.                   William H. Paine (BBO #550506)
75 State Street                                Hale and Dorr LLP
Boston, MA  02109                              60 State Street
(617) 342-4000                                 Boston, MA  02109
                                               (617) 526-6000


_Ethan Jacks_ (CAH)                            _Eugene Berman_ (CAH)
ETHAN JACKS                                    EUGENE BERMAN


Dated:  February 13, 2002


                                  -22-